FILED
2012 Sep-24  PM 02:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **CAREY SPENCER; SUSAN SPENCER,** | ) |
| **and JOSHUA SPENCER, through his father** | ) |
| **and next friend, CAREY SPENCER,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| | ) |
| **v.** | ) **CASE NO. 2:11-cv-00357-JEO** |
| | ) |
| | ) |
| **PUBLIC STORAGE, f.k.a. PUBLIC** | ) |
| **STORAGE, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

**<u>MEMORANDUM OPINION</u>**

On January 5, 2011, plaintiffs Carey Spencer, Susan Spencer and Joshua Spencer, by and

through his father and next friend Carey Spencer ("the Spencers" or "the plaintiffs"), initiated

this civil action against defendant Public Storage ("Public Storage" or "the defendant") with a

complaint filed in the Circuit Court of Jefferson County, Alabama. (*See* Exhibit A to Doc. no. 1,

at 1-5,[1] *Carey Spencer, et. al. v. Public Storage*, *Inc*., 01-CV-2011-900034.00). The Spencers

are residents of Birmingham, Alabama, and Public Storage "is a foreign corporation which

operates storage warehouses in the State of Alabama and in Jefferson County, Alabama." (*Id.* at

2).

---

[1] For purposes of citation to the Spencers' complaint, the court will refer to the numbers centered at the bottom of each page of the complaint. Citations to all other pleadings shall be in accordance with the document and page number assigned by the clerk of court, if any.

I.      BACKGROUND

The Spencers allege four causes of action: (1) conversion, (2) negligence and/or wantonness, (3) violations of the Alabama Self-Service Storage Act ("the Storage Act" or "the Act") and (4) a violation of the Alabama Deceptive Trade Practices Act ("ADTPA").  (*Id.* at 1-4).  For conversion, the Spencers demand $100,000 in compensatory damages and $500,000 in punitive damages.  (*Id.* at 4-5).  For negligence and/or wantonness, the Spencers demand $100,000 in compensatory damages and $500,000 for emotional distress.  (*Id.* at 5).  The Spencers demand "treble damages for the financial value of their personal and business property," as well as attorney fees and expenses for the ADTPA violation.  (*Id.*)

On November 14, 2011, the Spencers filed a motion for partial summary judgment and supporting brief, along with evidentiary submissions in the form of documents, admissions, answers to interrogatories, depositions and the like.  (Docs. 8 & 9).  The motion for partial summary judgment concerns two issues.  First, the Spencers move for partial summary judgment "on the issue of liability" as to their conversion claim.  (Doc. 8 at 1).  Second, the Spencers "seek partial summary judgment striking any defenses based upon contractual exculpatory language with regard to the plaintiff's claims for conversion."  (*Id.*)  The Spencers contend that "the case should be submitted to the jury for a determination of the full damages suffered by the Spencers in accordance with the law of damages."  (Doc. 9 at 10).

Also on November 14, 2011, Public Storage filed a motion "for summary judgment denying each of [the p]laintiffs' claims in their entirety."  (Doc. 10 at 1, 4-30).  In the alternative, Public Storage moves for partial summary judgment to restrict the Spencers' available damages to $10,000.00, in accordance with the $5,000.00 limitation of liability language set out each of

2

the rental agreements.  (*Id.* at 1-2).

Thereafter, pleadings in opposition to the respective motions for summary judgment were filed by Public Storage and the Spencers.  (Docs. 14 & 15, respectively).  Public Storage and the Spencers also filed replies in support of their own motions.  (Docs. 16 & 17, respectively).  The motions are ripe for summary judgment review.  The parties have consented to the jurisdiction of the undersigned pursuant to the provisions of 28 U.S.C. § 636(b).

## II.    STANDARD OF REVIEW

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to a judgment as a matter of law.  FEDERAL RULE OF CIVIL PROCEDURE 56(c).  "Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."  *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  Stated another way,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (*per curium*) (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (internal quotes and citation omitted)).

The moving party carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact."  *Rice-Lamar v. City of Ft. Lauderdale,* 232 F.3d 836, 840 (11th Cir. 2000) (citing

3

*Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986)).  "Only when that burden has been

met does the burden shift to the non-moving party to demonstrate that there is indeed a material

issue of fact that precludes summary judgment.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608

(11th Cir. 1991).  The non-moving party is then required "to go beyond the pleadings" and

present competent evidence such as affidavits, depositions, and admissions that identify "specific

facts showing there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.  "The mere existence

of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for

summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

The reviewing court's function is not to weigh the evidence and determine the truth of the

matter but to determine whether there is a genuine issue for trial.  *Id*. at 248.  "[F]acts must be

viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as

to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  "When opposing parties tell two

different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of facts for the purpose of ruling on a

motion for summary judgment."  *Id*.  If the record does not blatantly contradict the non-movant's

versions of events, the court must determine "whether a fair-minded jury could return a verdict

for the plaintiff on the evidence presented."  *Anderson*, 477 U.S. at 252; *see also EPL, Inc. v.

USA Federal Credit Union*, 173 F.3d 1356, 1362 (11th Cir. 1999).

In the present case, the parties have filed cross-motions for summary judgment as to some

of the claims and issues to be resolved.  It is understood that

> "[t]he applicable Rule 56 standard is not affected by the filing of
> cross-motions for summary judgment." *Murray v. Holiday Isle, LLC*, 620 F. Supp.
> 2d 1302, 1307 (S.D. Ala. 2009) (citations omitted); *see also Godard v. Alabama*

4

> *Pilot, Inc.*, 485 F. Supp. 2d 1284, 1291 (S.D. Ala. 2007) (same).  Indeed, the
> Eleventh Circuit has explained that "[c]ross-motions for summary judgment will
> not, in themselves, warrant the court in granting summary judgment unless one of
> the parties is entitled to judgment as a matter of law on facts that are not genuinely
> disputed."  *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984)
> (citation omitted); *see also Wermager v. Cormorant Tp. Bd.*, 716 F.2d 1211, 1214
> (8th Cir. 1983) ("the filing of cross motions for summary judgment does not
> necessarily indicate that there is no dispute as to a material fact, or have the effect
> of submitting the cause to a plenary determination on the merits").  Nonetheless,
> "cross-motions may be probative of the absence of a factual dispute where they
> reflect general agreement by the parties as to the dispositive legal theories and
> material facts."  *Murray*, 620 F. Supp. 2d at 1307 (citations omitted); *see also*
> *Godard*, 485 F. Supp. 2d at 1291.

*First Financial Bank v. CS Assets, LLC*, 678 F. Supp. 2d 1216, 1226 (S.D. Ala. Jan. 13, 2010).

## III.   CLAIMS THREE AND FOUR

The Spencers concede that Public Storage's motion for summary judgment (doc. 10) is

due to be granted in part.  (Doc. 15 at 8, 14).  The court concurs.  First, the Spencers agree that

the Storage "Act does not create a private cause of action."[2/]  (Doc. 15 at 8 (citing ALA. CODE §

8-5-31, *et. seq.* (1975)).  Therefore, to the extent Public Storage's motion for summary judgment

pertains to the "Third Cause of Action" in the Spencers' complaint, that Public Storage violated

"provisions of the Alabama Self-Storage Act,"[3/] Public Storage's motion for summary judgment

(doc. 10 at 1) is due to be granted.

Second, the Spencers "agree that Public Storage is entitled to partial summary judgment

---

[2/] The Spencers, however, disagree with Public Storage's contention that the Act's lack of a private cause of action necessarily "impedes" their "common law claims against Public Storage."  (Doc. 15 at 8).  It is Public Storage's position that all claims should be denied because "every claim Plaintiffs make is dependent on [a] violation of that Act."  (Doc. 10 at 10).  This issue will be resolved in the discussions below concerning the statutory construction of the Act and the remaining common law claims of conversion and negligence/wantonness.  The Spencers' position is supported by the construction of and interplay between § 8-15-34 (14) and §§ 8-15-36 and -37 of the Act.  Public Storage's contrary position is not supported because it is based on cases that interpret different Alabama statutes that do contain the precise language of the Act.

[3/] (Doc. 1 at 11-12 (Exhibit A)).

solely on the [p]laintiffs' claim under the Deceptive Trade Practices Act." (Doc. 15 at 14). Therefore, to the extent Public Storage's motion for summary judgment pertains to the "Fourth Cause of Action" in the Spencers' complaint, that Public Storage "engaged in unlawful trade practices and deceptive acts or practices in violation of the Alabama Deceptive Trade Practices Act," Public Storage's motion for summary judgment (doc.10) also is due to be granted.

## IV.   THE REMAINING CLAIMS

The remaining claims are conversion and negligence/wantonness.

### A.   Facts

Carey and Susan Spencer are a married couple who reside in Birmingham, Alabama. Carey Spencer is a lawyer and Susan Spencer is a flight attendant. In 2007, Carey Spencer rented one storage unit from Public Storage, which is located at 1900 Mini Warehouse Road in Birmingham, Alabama. Sometime prior to May 26, 2009, the Spencers decided to rent a second storage unit. Carey Spencer and Susan Spencer executed separate rental agreements for the two storage units. Rent was due on the storage units on or before the 1st day of each month, but during the majority of the time they rented units from Public Storage, the Spencers suffered medical and financial problems, and thus often made late rental payments. For example, the Spencers did not pay the monthly rent due on August 1, 2009, and September 1, 2009, but after being notified that the contents of the units would be sold at auction if the rent was not paid, the Spencers rectified their accounts. (Doc. 10-1 at ¶¶ 9 & 10).

Close to year's end, however, the Spencers had failed to pay the rent due on October 1, 2009, November 1, 2009, and December 1, 2009. (*Id*. at 5 of 23, ¶ 11). Employees of Public Storage attempted to call the Spencers at the phone number provided by Spencers on October 6,

20, 26, 29, 31, November 3, 17, 27, 30, and December 1, 2009, but the rental payments remained in arrears.  (*Id*. at ¶ 13).  Messages were left by Public Storage on some of these calls that informed the Spencers of past due amounts and potential auction of the units, as well as requests for return phone calls from the Spencers.

On December 7, 2009, Public Storage advertised the sale of the Spencers' storage units in the classified section of the Birmingham News.  "The advertisement included descriptions of the property as the property stored in Space A001 and Space B140, Public Storage's address, Plaintiff's name and last known address, and the time, place and manner of the sale."  (*Id*. at ¶ 14).

On December 11, 2009, Public Storage sent the Spencers notices of the "Owner's Intention to Satisfy Lien" with respect to each of the storage units via certified mail.  (*Id*. at ¶ 12). According to Patty Yeary, District Manager for Public Storage, "[t]hese Notices were sent to Plaintiffs' address of record."  (*Id*.)  The notices advised the Spencers that if they did not rectify their accounts within 15 days, the contents of their units would be sold at public auction on December 22, 2009, at 9:30 a.m.  (*See e.g.*, Doc. 10-3 at 74 of 81).

In their initial motion for summary judgment, the Spencers declare as fact that the notices were not delivered to them because they were returned to Public Storage for an insufficient address.  (Doc. 9 at 3).  The Spencers provide no citation or evidence to support this contention. Moreover, in opposition to the Public Storage's motion for summary judgment, the Spencers appear to withdraw their complaints about the *sufficiency* of the addresses, and instead declare that they "do not deny that Public Storage sent Notices of Owner's Intention to Satisfy Lien via certified mail[, but the] notices were never delivered and Public Storage is unable to produce

7

certified mail receipts showing the delivery of the letters."  (Doc. 15 at 2 (brackets added)).

Public Storage disputes these facts and declares that

> the letters were mailed to Plaintiff's P.O. Box but were returned when Plaintiffs
> failed to timely check their mail.  See Deposition of C. Spencer, pp. 99-100, ll. 3-
> 6 ("Q: So any personal or professional correspondence that you had from
> whenever you left [prior testimony reflected Plaintiff left town prior to December
> 25, 2009] until January 7th went unchecked?  A: Yes.").  Moreover, notice of the
> letters is presumed delivered under section 8-15-34(6) of the Alabama Self-
> Service Storage Act[, which instructs that "[a]ny notice made pursuant to this
> shall be presumed delivered when it is deposited with the United States postal
> service and properly addressed with postage prepaid.]

(Doc. 14 at 3-4 (second bracketed set added)).  Public Storage has produced no evidence to

support its declaration that the letters were returned based upon the Spencers' untimeliness.

Nonetheless, the Spencers do not dispute that delivery is presumed pursuant to the Storage Act

when the owner deposits the notices via certified mail with the U.S Postal Service, and the

envelopes are directed to the last known address(es) provided by the Spencers.  Nor do they

dispute that they were responsible for providing their last known address(es) to the owner in

writing.

On December 14, 19, 20 and 21, 2009, Public Storage attempted to call and inform the

Spencers of the upcoming auction.  On December 22, 2009, Public Storage auctioned off the

contents of the units.  (Doc. 10-1 at 6 of 23, ¶ 15).  The Spencers were out of town on Christmas

vacation when the units were auctioned.

On January 7, 2010, after returning from Christmas vacation, Mr. Spencer went to the

premises of Public Storage to pay his rent and learned from the manager that the storage units

had been sold.  (Doc. 10-2 at 26 of 50).  Spencer requested the names of the individuals who had

purchased the contents of the storage units.  He indicated he would be willing to buy the contents

8

back.  He explained to the Public Storage representative that the units contained important legal files as well as irreplaceable family heirlooms.  Public Storage refused to give him the name of the purchasers.  Instead, they called one of the purchasers on the telephone and allowed Mr. Spencer to speak with him.  This individual identified "all kinds of documents" that he had hauled from the storage unit.  (Doc. 9-3 at 26 of 31).  Mr. Spencer immediately recognized the documents as his legal files.  The man told Mr. Spencer that "I just threw them in the dumpster." (*Id*.)  Mr. Spencer told the gentleman that he needed the contents back and that "I'll pay you." (*Id*.)  When asked if he had sold the other contents of the storage unit, the man said "no I haven't gotten rid of it yet."  (*Id*.)  Over the next couple of days, Spencer repeatedly called the representative of Public Storage requesting the man's telephone number so he could speak with him directly.  Public Storage refused to give Spencer the number.  Spencer never spoke with the person again.  (*Id*.)  Mr. Spencer later saw some personal items that had been in the units at thrift stores in the area.  (*Id*.)  The items included books and office chairs.  (*Id*. at 26-27 of 31).

      **B.**       **The Law and Analysis**

      "Federal courts sitting in diversity apply the substantive law of the state in which the case arose."  *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1133 (11th Cir. 2010) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).  In this case, the Storage Act, the language in the rental agreements, and the Spencers' remaining causes of action implicate numerous intersecting areas of Alabama law: the Storage Act and the enforcement of liens and contracts, the common law torts of conversion and negligence/wantonness, and exclusionary and limitation of liability clauses.

1.      **The Storage Act** (ALA. CODE § 8-15-31, *et. seq*. (1975))

Although the Storage Act was enacted in May 1981, there is only one Alabama State

court opinion concerning the language and application of the Act or the relationship between the

Act and the other issues to be decided in this case.  Thus, to the extent the parties dispute the

meaning and application of the Act, it is up to this court to determine how Alabama would decide

the matter, if it can do so without resorting to "making unnecessary *Erie* 'guesses.'"  *CSX*

*Transp., Inc. v. City of Garden City*, 325 F.3d 1236, 1239 (11th Cir. 2003) (quoting *Mosher v.*

*Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 916-17 (11th Cir. 1995)).

With regard to statutory construction, however, the Alabama Supreme Court has provided

explicit instructions:

> "When interpreting a statute, a court must first give effect to the intent of
> the legislature.  *BP Exploration & Oil, Inc. v. Hopkins*, 678 So. 2d 1052 (Ala.
> 1996).
>
> > " 'The fundamental rule of statutory construction is that this Court
> > is to ascertain and effectuate the legislative intent as expressed in
> > the statute.  *League of Women Voters v. Renfro*, 292 Ala. 128, 290
> > So. 2d 167 (1974).  In this ascertainment, we must look to the
> > entire Act instead of isolated phrases or clauses; *Opinion of the*
> > *Justices*, 264 Ala. 176, 85 So. 2d 391 (1956).'
> >
> > "*Darks Dairy, Inc. v. Alabama Dairy Comm'n*, 367 So. 2d 1378,
> > 1380 (Ala. 1979) (emphasis added).  To discern the legislative
> > intent, the Court must first look to the language of the statute.  If,
> > giving the statutory language its plain and ordinary meaning, we
> > conclude that the language is unambiguous, there is no room for
> > judicial construction.  *Ex parte Waddail*, 827 So. 2d 789, 794 (Ala.
> > 2001).  If a literal construction would produce an absurd and unjust
> > result that is clearly inconsistent with the purpose and policy of the
> > statute, such a construction is to be avoided.  *Ex parte Meeks*, 682
> > So. 2d 423 (Ala. 1996)."

*City of Bessemer v. McClain*, 957 So. 2d 1061, 1074–75 (Ala. 2006).  "When a

10

court construes a statute, '[w]ords used in [the] statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.' " *Ex parte Berryhill*, 801 So. 2d 7, 10 (Ala. 2001) (quoting *IMED Corp. v. Systems Eng'g Assocs. Corp.*, 602 So. 2d 344, 346 (Ala. 1992)).  As we have repeatedly stated, the function of this Court is " 'to say what the law is, not to say what it should be.' "  *Ex parte Achenbach*, 783 So. 2d 4, 7 (Ala. 2000) (quoting *DeKalb Cnty. LP Gas Co. v. Suburban Gas, Inc.*, 729 So. 2d 270, 276 (Ala. 1998)).

*Ex parte Sacred Heart Health System, Inc.*, ---- So. 3d ----, ----, 2012 WL 677549, * at 5 (Ala. March 2, 2012).

The stated purpose of the Storage Act is "[t]o define and regulate self-service facilities; to provide for a lien on property stored in such facilities; and to provide for the enforcement of said lien."  *See* Act No. 81-769, Self-Service Storage Act, Acts of Alabama, Regular Session 1981, Volume 11, pp. 1321-22.  The latter two clauses clearly provide for a statutory lien and enforcement thereof.  Concentrating on the language in the first clause, "To define and regulate self-service facilities; ... ," the court notes that the word "define" in *Black's Law Dictionary* 487 (9th ed. 2009), means "to state or explain explicitly...."  In this instance, the statute defines a self-service storage facility as

> [a]ny real property designed and used for the purpose of renting or leasing individual storage space to occupants who are to have access to such facility for the purpose of storing and removing personal property.  No occupant shall use a self-service storage facility for residential purposes.  A self-service storage facility is not a public warehouse as used in Article 1 of this chapter.  If an owner issues any warehouse receipt, bill of lading or other document of title for the personal property stored, the owner and the occupant are subject to the provisions of Article 7 of the Uniform Commercial Code, and the provisions of this article shall not apply.

ALA. CODE, § 8-15-31(8).  *Black's* also defines a "regulation" as "[t]he act or process of controlling by rule or restriction," or "a rule or order having legal force."  *Id.* at 1398.  Thus, the

11

Act was created to define that type of facility and to establish rules and restrictions pertinent to

the statutory lien and enforcement procedures afforded to it under the Act.

Examining the entirety of the Act (ALA. CODE §§ 8-15-30 to 8-15-38), the court

recognizes that

> "[t]his case involves the construction of several statutory provisions and a determination of their import based upon the interplay of those provisions. Thus, ... the rules of statutory construction [are employed]
>
>> " ' " ... to give effect to the legislative intent whenever that intent is manifested. *State v. Union Tank Car Co.*, 281 Ala. 246, 248, 201 So. 2d 402, 403 (1967). When interpreting a statute, this Court must read the statute as a whole because statutory language depends on context; we will presume that the Legislature knew the meaning of the words it used when it enacted the statute. *Ex parte Jackson*, 614 So. 2d 405, 406–07 (Ala. 1993). Additionally, when a term is not defined in a statute, the commonly accepted definition of the term should be applied. *Republic Steel Corp. v. Horn*, 268 Ala. 279, 281, 105 So. 2d 446, 447 (1958). Furthermore, we must give the words in a statute their plain, ordinary, and commonly understood meaning, and where plain language is used we must interpret it to mean exactly what it says. *Ex parte Shelby County Health Care Auth.*, 850 So. 2d 332 (Ala. 2002)."
>>
>> " ' *Bean Dredging, L.L.C. v. Alabama Dep't of Revenue*, 855 So. 2d 513, 517 (Ala. 2003). In addition, " ' " '[t]here is a presumption that every word, sentence, or provision [of a statute] was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used." ' " ' *Surtees v. VFJ Ventures, Inc.*, 8 So. 3d 950, 970 (Ala. Civ. App. 2008) (quoting *Ex parte Uniroyal Tire Co.*, 779 So. 2d 227, 236 (Ala. 2000), quoting in turn other cases).'
>
> " *IEC Arab Alabama, Inc. v. City of Arab*, 7 So. 3d 370, 375 (Ala. Civ. App. 2008)."

*AltaPointe Health Systems, Inc. v. Davis*, 90 So. 3d 139, 156-57, (Ala. 2012) (quoting *Green Tree–AL LLC v. Dominion Res., L.L.C.*, [Ms. 2100187, September 9, 2011]--- So. 3d ----,----

(Ala. Civ. App. 2011) (first and second brackets added)).

The Storage Act will therefore be read in totality and in accordance with its plain language when deciding its meaning.  To the extent the parties argue over the statutory construction of the Act, for the most part, it is regarding: (1) whether the rental agreement Public Storage penned contains a contractual lien separate and distinct from the Act's statutory lien and enforcement provisions, (2) whether the language of § 8-15-34(14) pretermits the Spencers' remaining claims if those claims are predicated on Public Storage's purported failure to follow the notice provisions of the Act, and (3) whether the notice provisions in the Act are mandatory when a public-storage facility chooses that particular statutory lien and enforcement mechanism to the exclusion of all other available mechanisms.  Because the court's determination of the these issues is dispositive of the pending motions, the undersigned pretermits discussion of the remaining issues presented by the parties.

> **a.**     *Whether the Storage Act is the only mechanism available to Public Storage under Alabama law for the creation and enforcement of a lien.*

The Storage Act is not the only legal mechanism for the creation and enforcement of a lien in connection with the self-service storage industry in the State of Alabama.  In fact, one sub-section and two other sections of the Act express that the Act operates in addition to "other rights allowed by law."  The three read:

**§ 8-15-34(14).  Satisfaction of owner's lien.**

> An owner's lien as provided for a claim which has become due may be satisfied as follows:

> **[(1-13)** omitted]

13

**(14)**  If the requirements of this article are not satisfied, if the sale of the property is not in conformity with the notice of sale, or if there is a willful violation of this article, nothing in this section affects the rights and liabilities of the owner, occupant, or any other person.

### § 8-15-36.  Rights provided by article as additional to other rights allowed by law.

Nothing in this article shall be construed as in any manner impairing or affecting the right of the parties to create additional rights, duties and obligations in and by virtue of the rental agreement.  The rights provided by this article shall be in addition to all other rights allowed by law to a creditor against his debtor.

### § 8-15-37.  Effect of other laws governing rights of creditors and landlords against debtors and tenants.

The rights provided by this article shall be in addition to all other rights allowed by law to a creditor against a debtor and by a landlord against his tenant.

The import of §§ 8-15-34, 36 and 37 reveals that the Storage Act exists not only *in addition* to other rights allowed by Alabama with regard to creditor/debtor and landlord/tenant law, but expressly grants the parties the ability to create *even further*, *additional* rights between themselves in the rental agreement.  The Alabama Court of Civil Appeals recently affirmed this in *Canyon Development Co., Inc. v. Holcomb Storage*, --- So. 3d ---, 2012 WL 3242076 (Ala. Cvil. App. August 10, 2012), holding that parties to a self-storage agreement possess the authority to create a contractual lien outside the statutory lien created by the Act.  *Id.* at *7.

This court agrees with the reasoning of the Alabama Court of Civil Appeals in *Canyon*. The court will further explain why below.

      **b**.    *§§ 8-15-36 and 37 and the Rights Allowed By and Effects of Other Alabama Law*

Public Storage points to both sections cited above, but does so without explanation as to

14

statutory construction or legal implication.  (Doc. 14 at 10).  Since it can be argued that this case

hinges upon lien enforcement, in comparing these "rights and effects of other Alabama law" to

the Storage Act, this court has found a crucial distinction that separates the lien enforcement

provisions of the Act from *all other methods of lien enforcement already available* under

Alabama creditor/debtor, landlord/tenant law.  Specifically, only the Act creates a statutory lien

that may be satisfied by a procedure that ultimately allows the owner to conduct an extrajudicial

sale to satisfy the lien in the event of default.

Historically in Alabama if "a common law lien [was recognized in a particular situation,]

'... [that lien was] simply a right to retain possession of the chattel until some debt or demand due

to the person thus retaining is satisfied; and possession [was] such an inseparable element that, if

it be voluntarily surrendered by the creditor, the lien [was] at once extinguished.'"  *Erswell, et al.*

*v. Ford*, 208 Ala. 101, 94 So. 67, 69 (Ala. 1922) (quoting 3 Pom. Eq. Jur. (4th Ed.)  §§ 1233,

1234).  However, even Alabama common law "does not give a landlord a lien for rent."

*Montana v. Alabama Fishermen's & Hunters' Ass'n*, 146 So. 805, 806-807 (Ala. 1933) (citing16

R. C. L. p. 975, § 487; *Morgan v. Campbell*, 2 Wall. 381, 22 L. Ed. 796 (1874)).

Much of Alabama's common law has been codified in order to establish statutory liens,

and one such example involves the landlord/tenant context.[4/]  According to that statute, the

"landlord of any storehouse ... or building ... shall have a lien on the goods, furniture and effects

belonging to the tenant ... for his rent."  *See* ALA. CODE § 35-9-60 (1975).  The lien is created as

---

[4/] There are many types of statutory liens created by Alabama law, but none relate to this case.  In fact, just in the landlord/tenant context, "Alabama law provides for landlords' liens for" several purposes, but the one discussed above is the only one pertinent here.  *Cf., Conseco Finance Corp.-Alabama v. Attaway*, 21 So. 3d 1230, 1233 (Ala. Civ. App. 2003) (citing *Faulk v. Green Tree Acceptance, Inc.*, 549 So. 2d 80, 81 (Ala. 1989) (towing and storage charges for an abandoned mobile home do not result in a statutory lien or a common-law possessory lien); ALA. CODE § 35-9-30 (1975) (providing a landlord's lien against a tenant's crops grown on rented lands).

soon as the tenant's property is brought onto the landlord's property.  *Id.*  Still, in the event of a

default, a landlord only may enforce this type of statutory lien by "proceed[ing] in equity [or

utilizing t]he remedy by attachment given by the statute [in § 35-9-61]," both of which require a

judicial presence in the process.  *H.M. Price Hardware Co. B. Meyer*, 138 So. 543, 545 (Ala.

1931).  Since Public Storage conducted an extrajudicial sale of the Spencers' property in order to

enforce the contract, it cannot be said that Public Storage was acting pursuant to this statutory

landlord tenant lien.  Moreover, Public Storage does not mention, much less argue that there is

any other Alabama common law or other statutory lien associated with Alabama creditor/debtor

law which authorizes the enforcement procedures Public Storage used to satisfy the lien under

the facts of the present case.

      Public Storage does argue that § 8-15-36 of the Act expressly allows "the parties to create

additional rights, duties and obligations in and by virtue of the rental agreement."  (Doc. 14 at

10).  Based upon this section, Public Storage contends that it had the ability to create a

contractual lien within the rental agreement between the parties.  The court agrees.  Accordingly,

the next issue is whether the rental agreement clearly and unambiguously contains a contractual

lien.  Public Storage argues that it does.  The Spencers do not argue against Public Storage's

statutory interpretation of § 8-15-36 or *Montana's* explanation of Alabama's contractual lien

language.  They do argue, however, that there is *no* clear language in their rental agreements that

evidences an intent to create a contractual lien.

      "'The issue whether a contract is ambiguous or unambiguous is a question of law for a

court to decide.'"  *Ohio Cas. Ins. Co. v. Holcim (US), Inc*., 548 F.3d 1352, 1357 (11th Cir. 2008)

(quoting *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 308 (Ala. 1999)).  "'A contractual

provision is ambiguous if it is reasonably susceptible of more than one meaning.'" *Id.* (quoting

*FabArc Steel Supply, Inc. v. Composite Constr. Sys., Inc*., 914 So. 2d 344, 357 (Ala. 2005)

(citing *Alfa Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 684 So. 2d 1295, 1299-1300 (Ala. 1996)).

Thus, the court next must consider whether the rental agreement includes a contractual lien

### 2.    *Is there a contractual lien in the rental agreement?*

The following describes the general rule of contract construction in Alabama law.

> When interpreting a contract, a court should give the terms of the contract
> their clear and plain meaning and should presume that the parties intended to do
> what the terms of the agreement clearly state.  *See Pacific Enters. Oil Co. (USA)
> v. Howell Petroleum Corp.*, 614 So. 2d 409 (Ala. 1993).  Moreover, any
> ambiguity in a contract is construed against the drafter.  *See Strickland v. General
> Motors Acceptance Corp.*, 578 So. 2d 1275 (Ala. 1991).

*Brewbaker Motors, Inc. v. Belser*, 776 So. 2d 110, 112 (Ala. 2000).  In its opposition to the

Spencers' motion for summary judgment (doc. 14 at 2, 7-14) and in its reply in support of its

own motion for summary judgment (doc. 16 at 5), Public Storage argues that the Spencers are not

entitled to summary judgment as to their conversion claim because Public Storage "had a

contractual lien pursuant to which it was not required to fulfill every notice obligation set forth in

the Alabama Self-Service Storage Act."[5]  This contractual lien is purportedly embodied in

paragraphs 6, 7, and 9 of the rental agreement, which read:

> 6.   NOTICE.  Pursuant to section 8-15-31(17) [sic],[6] as amended, you
> are hereby notified that you may be denied access to the Premises and all articles
> stored under the terms of this Rental Agreement will be sold or otherwise
> disposed of if no payment has been received for continuous 30 day period.

---

[5] Public Storage initially did not move for summary judgment on the basis that the rental agreements contain a
contractual lien and that it proceeded in accordance with the contractual lien.

[6] The court notes that there is no subsection 17 in § 8-15-31. Notice is referenced in § 8-15-31(7) defining a "Rental
Agreement." ALA. CODE § 8-15-31(7).

[OCCUPANT'S INITIALS HERE_____].[<sup>7/</sup>]

7.  DENIAL OF ACCESS.  Upon the continuation of any default under this Rental Agreement, Owner may, in addition to any liens provided by law or this Rental Agreement, deny Occupant access to the Premises and to any personal property stored by Occupant on the Premises without any liability whatsoever, including, without limitations, liability for trespass or conversion.

9.  TERMINATION AND DEFAULT.  Owner may terminate the Rental Agreement at the expiration of any term by giving written notice to Occupant by certified mail not less than seven (7) days before expiration of the terms, or ten (10) days if Occupant is in default under the Rental Agreement.  Occupant may terminate this Rental Agreement at any time by giving two (2) days oral or written notice to the Owner.  If Occupant defaults under any of his obligations under this Rental Agreement, Owner may pursue any remedies available to Owner under applicable [sic] or this Rental Agreement.  Owner's decision to pursue one remedy shall not prevent Owner from pursuing other available remedies.

(Doc. 10-3 at 25 of 81 (first and last brackets added)).

Public Storage declares that

[u]nder the terms of the contractual lien, Public Storage was authorized to sell or otherwise dispose of the property stored in the units if no payment had been received for a continuous 30-day period.  Moreover, it could, in the event of a default, terminate the Rental Agreements by giving written notice to Plaintiffs by certified mail and "pursue any remedies available to it under applicable law or the Rental Agreements.  Moreover, Public Storage's decision "to pursue one remedy [did] not prevent [it] from pursuing other available remedies."

(Doc. 14 at 7-8).  Public Storage contends that it satisfied the terms of this contractual lien and therefore cannot be liable for conversion.  (Doc. 16 at 5).  The Spencers argue that

"there is **no** language in [paragraphs 6, 7 and 9 of] the Spencers' contract that purports to establish a contractual lien or give Public Storage the right to sell their property other than the terms and conditions of the Alabama Self Storage Act....  Paragraph 6 merely references the right to sell the tenant's goods pursuant to Section 8-15-31([]7) of the Alabama Self Storage Act.  There is no additional language ... [in this paragraph or paragraphs 7 and 9] .... that can be construed to create a contractual right to sell the Spencers' property.

---

<sup>7/</sup> The blanks were initialed in each of the agreements in the appropriate places.

18

(Doc. 17 at 3-4 (brackets added)).  Both sides also argue that comparative cases and other

statutory lien law support their positions.  (Doc. 14 at 11-15 and Doc. 17 at 3-5).  However, in

keeping with the rules governing contract and statutory construction, the initial focus is the

contract language itself and the applicable statutory language of the Storage Act.  *See Canyon*,

2012 WL 3242076, at *6 (stating that "[t]he language of the rental agreement established a

contractual lien....").

The discussion must begin with paragraph 6 of the rental agreements, dealing with notice,

which tells the occupants (the Spencers) that pursuant to § 8-15-31 (7) of the Storage Act that

Public Storage "will [sell] or otherwise dispose of " the particular occupant's property "if no

payment has been received for [a] continuous 30-day period."   Section 8-15-31(7) defines a

rental agreement as:

> Any written agreement or lease which establishes or modifies the terms,
> conditions, rules, or any other provisions concerning the use and occupancy at a
> self-service storage facility and *which contains a notice stating that all articles
> stored under the terms of such agreement will be sold or otherwise disposed of if
> no payment has been received for a continuous 30-day period*.  Such agreement
> shall contain a provision directing the occupant to disclose any lien holders with
> an interest in property that is stored or will be stored in such self-service storage
> facility.

(emphasis added).  There is no dispute that this action involves "rental agreement[s]" as defined

by the statute.  The Act dictates that "[t]he provisions of the article shall apply to all rental

agreements entered into or extended or renewed after May 27, 1981."  ALA. CODE § 8-15-38

(1975).  Thus, not only does the content and meaning of the notice section (paragraph 6) identify

that it is being written "pursuant to," which means "[i]n compliance with"[8] the Storage Act,

---

[8] *Black's Law Dictionary* 1356 (9th ed. 2009).

19

Public Storage was required by the Act itself to include that language in all rental agreements.

However, the language of paragraph 6 does not incorporate the remaining provisions of the Act except where Public Storage attempts to enforce its statutory lien under the Act. Inclusion in this notice of the reference to § 8-15-38 does not mandate that any sale or disposal of the property must be done in compliance with the Storage Act.  To the extent that the Spencers argue there is no language in paragraphs 6, 7 and 9 to indicate that the parties intended to create a contractual lien or right to sell the items outside the statutory scheme, the court disagrees.  In reaching this conclusion, the court has resolve any ambiguity in the agreement against Public Storage and liberally in favor of the Spencers.  *Mega Life And Health Ins. Co. v. Pieniozek*, 516 F.3d 985, 992-93 (11th Cir. 2008).

Public Storage contends that the Eleventh Circuit has acknowledged that it is "well settled" in Alabama that "a party may enforce a contractual lien against another party despite the fact that a provided for statutory lien is unenforceable."  (Doc. 14 at 11 (citing *Dallas v. S.A.G., Inc.*, 836 F.2d 1307, 1309-1310 (11th Cir. 1988) (additional citation omitted); *Montana v. Alabama Fishermen & Hunters Association*, 226 Ala. 303 (Ala. 1933).  Public Storage also points to the *Canyon* case and two out-of-state cases in support of its position.  It argues that the Georgia and Oklahoma cases are helpful in that the appellate courts in those states have held that the lien enforcement mechanisms in those Self-Service Storage Acts are not mandatory due to provisions that are very similar to ALABAMA CODE §§ 8-15-34(14) and 8-15-36.  (Doc. 14 at 11-14 (citing  *Thompkins v. Mayers*, 434 S.E. 2d 798, 810 (Ga. App. 1993) and *Griffin v. Teague*, 115 P.3d 899, 900-01 (Okla. Ct. App. 2005)).  Finally, Public Storage contrasts the Storage Act with the statutory language of Alabama's Warehouse Lien Act to support its argument that the

20

Act is not a "mandatory" enforcement procedure under Alabama law.  (Doc. 14 at 13-15 (citing ALA. CODE § 7-7-201, *et seq.* (1975)) (noting in particular §§ 7-7-210(b) and (i) of the Warehouse Lien Act, which declares that statute is the "'only'" method of lien enforcement, and that liability for conversion may ensue if the statute is not followed.)

The Alabama Court of Civil Appeals recently addressed the interplay between the Storage Act and contractual language in a rental agreement in *Canyon.*  In that case, the rental agreement specifically stated that the "landlord shall have at all times a valid contracual lien for all rentals ... and [the] landlord may enter upon the demised premises as set out further herein, and take possession ..., and sell the same without notice...."[9/]  *Id.*, 2012 WL 324076, *1.  Premised on this language, the Court of Civil Appeals upheld the trial court's grant of summary judgment for the defendant, finding that the storage facility had the legal right to "sell" the property outside the provisions of the Storage Act.  *Id.*, at *6.  The Court of Civil Appeals relied on *Dallas v. S.A.G.., Inc.*, *Griffin*, and *Tompkins* in reaching its conclusion that the Storage Act provides a storage unit owner with a statutory lien which is but "one mechanism for recovering delinquent rent."  *Id.*

_____

[9/] In pertinent part, the agreement stated:

> "In addition to the landlord's lien as provided by Alabama law, but not in lieu thereof, landlord shall have at all times a valid contractual lien for all rentals or other sums of money becoming due hereunder from tenant upon all items situated in the premises, either now or in the future, and upon default by tenant, landlord may enter upon the demised premises as set out further herein and take possession of any and all items situated on the premises, without liability for trespass or conversion, and sell the same without notice at public or private sale, at which landlord or its assignees may purchase.
>
> "....
>
> "... [L]andlord may give written notice to tenant and begin enforcement action under Alabama law."

*Id.*

In *Tompkins*, the court analyzed the application of the Georgia Self-Service Storage Act, which similarly allows the parties to create contractual rights and duties between them in addition to the Act.  *Id*, 434 S.E. 2d at 810; GA. CODE ANN. § 10-4-210, *et. seq.* (1982).  The court therein noted the express language required in that case to create a contractual lien in the agreement:

> Lessee hereby appoints management as its attorney-in-fact to sell without advertisement at a private sale the goods located in the leased warehouse and sell such goods at any time after the installment of rent has remained unpaid for 30 days after due.  Lessee relinquishes all claims to the warehouse contents at this time and assigns title to these contents to the owner of U Store-U Lock.

*Id*.  This language expresses the clear intent of the parties "that the property should stand as security for the particular debt" and that the warehouse had the authority to sell the same. *Montana*, 146 So. at 807.  As noted by the *Canyon* court,

> the *Tompkins* court found that the rental agreement authorized the owner to sell the property stored at the facility if the rent remained unpaid for 30 days and that, by signing the rental agreement, the occupant "both relinquished all claim to the goods and assigned title to the owner."  209 Ga. App. at 811, 434 S.E.2d at 800. In affirming the judgment of the trial court, the *Tompkins* court stated, "[h]aving acted in accordance with the contract and enforced its provisions, and not having depended on the [Georgia Self–Service Storage] Act for the remedy of an owner's lien, the owner did not violate the [Georgia Self–Service Storage] Act."  *Id.*

*Id*. at *6.

In *Griffin*, the Oklahoma Court of Civil Appeals was required to consider provisions of the Oklahoma Self-Service Storage Act that are similar to the Alabama Act.  *Griffin*, 115 P. 3d 899; OKLA. STAT. tit. 42, §§ 191 to 200 (West 2012).  Like the Alabama Storage Act, Oklahoma's act establishes that the owner's lien attaches when the occupant brings his property onto the owner's land, operates in addition to other Oklahoma law and allows further agreements

22

between the parties.[10/]   However, *unlike* Alabama, Oklahoma also has a second, older statutory

lien that has similarities to the Oklahoma Self-Service Storage Act.  The statutory lien and

enforcement provisions under the older statute differ only in the date of attachment of the lien

(which occurs only upon the occupant's default) and some of the notice procedures required

before the property is sold.  *Id.* at 901-04.

     In trying to determine the Oklahoma parties' intent, the *Griffin* court looked to the rental

agreement, which provided that the owner would not take possession of the property until a

default occurred.  *Id.* at 901.  There was no mention of a lien whatsoever in the parties' contract,

much less a "'special agreement'" that would "assign title or create a lien."  *Id.*  Thus, the court

found no contractual lien.  It additionally found that because the rental agreement stated that

possession would not take place until default, the parties' intent must have been to contract

outside of the Oklahoma Self-Service Storage Act.  Finally, since the timing of possession in the

rental agreement and the notice that the owner provided the occupant before selling the property

---

[10/]  Public Storage argues that it had such a lien under § 8-15-33 of the Act.  (Doc. 14 at 15-16).  The Act provides:

    **§ 8-15-33. Lien of owner, etc., of self-service storage facility upon personal property located at facility.**

        Where a rental agreement, as defined in subdivision (7) of Section 8-15-31, is entered into between the owner and the occupant, the owner of a self-service storage facility and his heirs, executors, administrators, successors, and assigns shall have a lien upon all personal property located at a self-service storage facility for rent, labor, or other charges, present or future, in relation to the personal property and for expenses necessary for its preservation or expenses reasonably incurred in its sale or other disposition pursuant to this article.  *The lien attaches as of the date the personal property is brought to the self-service storage facility and continues so long as the owner retains possession and until the default is corrected, or a sale is conducted, or the property is otherwise disposed of to satisfy the lien.*  The lien provided for in this section is superior to any other lien or security interest, except for any tax lien as otherwise provided by law.  Notice to perfected security interests under the Uniform Commercial Code, with the name of the occupant as debtor, is required before a sale.

(Italics added).

comported with Oklahoma's older statutory lien and enforcement process, the Oklahoma court decided that the storage facility abided with that older statute and the owner was not liable for conversion.  Relying on *Griffin*, the *Canyon* court stated:

The Oklahoma Self–Service Storage Facility Lien Act provides, in pertinent part:

> "A.  An owner's lien as provided for a claim which has become due may be satisfied as provided by this section.  The possessory lien authorized by this section shall be prior to any previously perfected security interest in the personal property pursuant to Section 1–9–333 of Title 12A of the Oklahoma Statutes."

OKLA. STAT. tit. 42, § 197 (emphasis added).  As in the present case, the outcome of *Griffin* hinged upon whether the self-service storage-facility owner was required to comply with the statute in the sale of the tenant's property.  115 P.3d at 900.  The Oklahoma Court of Civil Appeals determined that,

> "[i]n reading the [Self–Service Storage Facility Lien] Act, it is clear that the legislature provided a lien to owners of self-storage facilities to secure the payment of rent for the storage space, and specified the procedure to foreclose the lien given by the [Self–Service Storage Facility Lien] Act.  It is equally clear, however, that owners of self-storage facilities who do not seek the lien protection of the [Self–Service Storage Facility Lien] Act have other lien protection as may be provided by law or by special contract or agreement."

*Id.* at 901.  In holding that § 197 of the statute was not mandatory upon the owner, the *Griffin* court provided further analysis of the Oklahoma statute:

> "We observe that the legislature expressly provided: 'Nothing in this act shall be construed as in any manner impairing or affecting the right of parties to create liens by special contract or agreement, nor shall it in any manner affect or impair other liens arising at common law[,] in equity, or by any statute of this state.' 42 O.S.2001 § 199.  The legislature also said: 'If the requirements of this act are not satisfied, if the sale of the personal property is not in conformity with the notice of sale, or if there is a willful violation of this act, nothing in this section [governing enforcement of the lien,] affects the rights and liabilities of the owner, occupant or any other person.' 42 O.S.2001 § 197(N)."

24

       *Id.*FN3

              FN3. The *Griffin* court did find that a different Oklahoma statute requiring notice was applicable to that case but that the self-service storage-facility owner had complied with the particular requirements of that statute.

       Finally, in *Dallas*, the Eleventh Circuit Court of Appeals held that where a lease agreement provides for a contractual lien, as well as a statutory lien (ALA. CODE § 35-9-60), the agreement is to be read in a manner so as to give the words of the agreement meaning. *Id.*, 836 F.2d 1309. The pertinent portions of *Dallas* provide:

              Owen's claim for relief from the automatic stay was based upon a provision in his lease agreement with the debtor which granted Owen "a lien on the goods, furniture and effects belonging to Tenant, for the rent payable hereunder...." The bankruptcy court held that Owen was not entitled to relief from the stay because his lien was a statutory lien under ALA. CODE § 35-9-60 (1975), which was avoidable by the trustee under 11 U.S.C. § 545. The district court agreed. On appeal, Owen contends that he has a contractual lien that stems from the lease agreement, rather than a statutory lien.

              Under Alabama law, the statutory lien provided by Ala. Code § 35-9-60 is read into and becomes a part of every lease as a matter of law. *In re Scruggs*, 205 F. 673, 675 (S.D. Ala. 1913). Section 35-9-60 provides the landlord with "a lien on the goods, furniture and effects belonging to the tenant...." As the district court correctly noted, the Supreme Court of Alabama has held that a lease may provide a landlord with a contractual lien in addition to the statutory lien. *See Alabama Butane Gas Co v. Tarrant Land Corp.*, 244 Ala. 638, 15 So. 2d 105 reh'g denied, 244 Ala. 646, 15 So. 2d 111 (1943). In order to create a contractual landlord's lien, "it must clearly appear that the parties intended that the property should stand as security for the particular debt." *Montana v. Alabama Fishermen's & Hunters' Ass'n*, 226 Ala. 303, 146 So. 805, 807 (1933). Thus, the issue of whether a landlord has a contractual as well as a statutory lien is a matter of discovering the parties' intent.

              Applying the law of Alabama in the present case, we conclude that the lease agreement provides Owen with a contractual lien. Section 35-9-60 provided Owen with a statutory lien regardless of whether the lease addressed the issue. The provisions in the lease regarding a lien did not serve to create or protect that statutory lien. **Thus, if the provision in the lease did not serve to create a**

**contractual lien, it served no purpose.  Just as we frequently observe when interpreting statutes, we do not believe that the words in the lease were intended to have no meaning and to serve no purpose.  If the words of the agreement are to be given any meaning, the lease must be read to express the parties' intention to create a contractual lien**.  Therefore, according to Alabama law, Owen has a contractual lien on the debtor's property....

*Dallas*, 836 F.2d at 1309 (bold added).

Premised on the foregoing authorities, this court finds that while the selling of the Spencers' property was inconsistent with the Storage Act, the sale was permitted by paragraph 6 of the agreements whereby they (the Spencers) were notified that "if no payment has been received for [a] continuous 30-day period," the occupant may be denied access to the storage area and the property "will be sold or otherwise disposed of."  While this may seem harsh in view of the requirements of the Storage Act, it is what the Spencers agreed to.[11]  The language in the agreements is terse and straight-forward.  When the Spencers did not pay the fees within the required time – which is not disputed – Public Storage had the contractual right to dispose of the property.  Because the agreements "clearly authorized" Public Storage to deny the Spencers access to the property and to sell it, any lack of compliance with the Storage Act is inconsequential under the circumstances.  In other words, the rental agreements between the Spencers and Public Storage do not embody or compel adherence to the requirements of Storage Act.  Those provisions only are applicable in instances where the owner is acting pursuant to a

---

[11] The court does note that the Spencers' long history of financial issues resulted in Public Storage sending them notices that a failure to correct a payment deficiency would result in the public sale of their goods.  (*See* July 16, 2009, Susan Spencer Notice Delinquence Notice ("... and the public sale of your goods"), September 14, 2009, Carey Spencer Notice of Owner's Intention to Satisfy Lien (if full payment is not made, your goods "will be sold at public auction at the storage facility, or otherwise disposed of, on October 12, 2009 at 9:30 AM.), September 14, 2009, Susan Spencer Notice (same), September 22, 2009, Carey Spencer Notice ("... [y]our partial payment does not stop the sale of your property ..."), September 22, 2009, Susan Spencer Notice (same),  October 16, 2009, Carey Spencer Delinquence Notice ("... and the public sale of your goods"), and October 16, 2009, Susan Spencer Delinquence Notice (same).

statutory lien, not in instances where there is action on contractual lien (unless they are otherwise incorporated into the contract).

Although the Spencers correctly note that the rental agreement in *Canyon* contains "unmistakably clear language," the absence of this exact language is not fatal in this instance.  As just noted, paragraph 6 of the rental agreements in this case is clear and definite – if you do not pay, your property will be sold.

In light of the court's determination that Public Storage had a contractual right to deny access to the property and to sell the same, its action in selling the items in the units was within the limits of the contract.  Accordingly, the Spencers' claims for conversion and wantonness premised on a failure to comply with the Storage Act are due to fail as a matter of law.[12]  In Alabama,

> [t]he elements of the tort of conversion have been long established, and these elements are relatively simple in their application to any given set of circumstances.  To sustain a claim of conversion, there must be (1) a wrongful taking; (2) an illegal assertion of ownership; (3) an illegal use or misuse of another's property; or (4) a wrongful detention or interference with another's property.  *Gray v. Liberty Nat'l Life Ins. Co*., 623 So. 2d 1156 (Ala. 1993); *Driver v. Hice*, 618 So. 2d 129 (Ala. 1993); *Gillis v. Benefit Trust Life Ins. Co*., 601 So. 2d 951 (Ala. 1992).

*Drennen Land & Timber Co. v. Privett*, 643 So. 2d 1347, 1349 (Ala. 1994).

> To [establish] conversion, there must be a wrongful taking or a wrongful detention or interference, an illegal assumption of ownership, or an illegal use or

---

[12] The Spencers concede that "[i]n Alabama, limitation of liability [and exculpatory] clauses are valid and enforceable against claims for ... negligence."  (Doc. 15 at 4 (citing *Saia Food Distributors & Club, Inc. v. Security Link from Ameritech, Inc*., 902 So. 2d 46 (Ala. 2004)).  Public Storage agrees that Alabama law will enforce the limitation of liability and [exculpatory] provisions as to the Spencers' negligence claims.  (Doc. 14 at 17 (citing *Fox Alarm Co., Inc. v. Wadsworth*, 913 So. 2d 1070, 1077 (Ala. 2005)).  In short, neither party disagrees that Public Storage could and did lawfully relieve itself from liability for any claims of negligence per the rental agreement.  (*See* Rental Agreement §5 (Limitation of Owner's Liability, Indemnity)).  Thus, to the extent Public Storage's moves for summary judgment with regard to liability and damages for the claim of negligence, the motion is due to be granted.

> misuse of another's property.  *Covington v. Exxon Co. U.S.A.*, 551 So. 2d 935,
> 938 (Ala. 1989).  'The gist of the action is the wrongful exercise of dominion over
> property in exclusion or defiance of a plaintiff's rights, where said plaintiff has
> general or special title to the property or the immediate right to possession.'  *Ott v.
> Fox*, 362 So. 2d 836 (Ala. 1978) (emphasis added)."

*Horne v. TGM Associates, L.P.*, 56 So. 3d 615, 628 (Ala. 2010) (quoting *Baxter v. SouthTrust*

*Bank of Dothan*, 584 So. 2d 801, 804-05 (Ala. 1991) (brackets added)).  In view of the

determination by the court that Public Storage was permitted by paragraph 6 of the agreements to

sell the property outside the requirements of the Storage Act, there is no wrongful exercise of

dominion over the property of the plaintiffs.  Accordingly, the conversion claim must fail.

    With regard to the wantonness claims, Alabama law dictates:

> "[t]o establish wantonness, the plaintiff must prove that the defendant,
> with reckless indifference to the consequences, consciously and intentionally did
> some wrongful act or omitted some known duty ... that ... proximately cause[d]
> the injury of which the plaintiff complains."  *Martin v. Arnold*, 643 So. 2d 564,
> 567 (Ala. 1994).

*Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1197 (11th Cir. 2004); ALA. CODE

§ 6-5-20(b)(3) (1975) (statutory wantonness is "conduct that is carried on with reckless or

conscious disregard of the rights or safety of others.").  The Spencers oppose Public Storage's

motion for summary judgment on this claim, arguing that Public Storage had a general duty to

use reasonable care in storing their possessions and its "breach of [that] duty is so egregious that

it rises to the level of wantonness."  (Doc. 15 at 12-13).  They declare that Public Storage was

"fully conscious of the fact that selling a couple's lifetime worth of possessions for a mere

pittance would cause them injury."  *Id.*  The Spencers further argue that Public Storage knew

they were in a perilous position because they were behind on the rent and yet it failed to use

appropriate care to give the Spencers timely notice (under the Storage Act) that their possessions

would be sold.  Had Public Storage given timely notice (under the Storage Act), then the injury

to the Spencers would have been avoided because Carey Spencer's January 7, 2010, attempt to

pay the rent due would have been within the time period allowed by the Act to redeem his

property.  All of these contentions assume that the Storage Act is applicable in this instance.  As

already stated, it is not mandatory in this instance.  Thus, Public Storage was acting within its

rights under paragraph 6 when it disposed of the property.  When the Spencers failed to pay as

agreed, Public Storage had the authority to act by selling the property.  Accordingly, it is entitled

to summary judgment on this claim.

**V.     CONCLUSION**

In view of the foregoing, Public Storage's Motion for Summary Judgment (doc. 10) is

due to be granted.  The Spencers' Motion for Partial Summary Judgment and to Strike Public

Storage's Defenses (doc. 8) is due to be denied.  The case is due to be dismissed with prejudice.

An appropriate order will be entered.

**DONE**, this the 24th day of September, 2012.

_John E. Ott_
**JOHN E. OTT**
United States Magistrate Judge